**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Greenbelt Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. PX-20-0434 |
| | ) | |
| JEREMY SCHULMAN | ) | |
| | ) | |

## REPLY TO OPPOSITION TO MOTION TO QUASH RULE 17 SUBPOENA FOR DOCUMENTS FROM SHULMAN ROGERS

Movant Shulman Rogers, P.A. ("Shulman Rogers"), by and through undersigned counsel, hereby replies to Defendant Schulman's opposition (ECF No. 474; hereinafter "Opp'n") to the Shulman Rogers's motion to quash the subpoena duces tecum issued pursuant to Federal Rule of Criminal Procedure 17 (ECF No. 461; hereinafter "Motion").

The Defendant is asking this Court to go beyond established and binding Fourth Circuit precedent, in order to authorize a sweeping use of Federal Criminal Rule 17.  The Fourth Circuit does not condone use of a Rule 17 subpoena in this manner. *See United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) (noting the right to defend oneself does not extend to compulsion of third parties to produce "investigatory" information); *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (finding speculative nature of requests did not satisfy the *Nixon* requirements). Tellingly, the bulk of cases cited by the Defendant are outside of this Circuit.

Before addressing the relevant arguments as to the Motion to Quash, Shulman Rogers will briefly respond to the repeated misguided complaints[1] about Mr. Schulman having to

---

[1] Defense counsel highlights its purported issues serving the subpoena in its oppositions to both the Motion to Quash and the Motion to Seal (ECF Nos. 474, 475).  Shulman Rogers has not moved to quash the subpoena based upon improper service so stating and then repeating its complaints is purely gratuitous.

comply with Rule 17 regarding personal service.  Mr. Schulman, having had years to obtain

information and waiting until the eve of trial, bemoans the fact that Shulman Rogers did not just

help him in his attempt at service.  A third party does not have an obligation to a litigant—in this

context, a litigant seeking to impose a heavy and unreasonable burden upon a non-party—to

sidestep proper process and voluntarily accept service.  Therefore, the issue of method and

timeliness of service is one wholly of defense counsel's creation because it sought to propound

fifteen broad requests just two weeks before the April trial date, meaning Shulman Rogers would

be responding in an expedited fashion despite the fact this prosecution has been pending for

years.[2]

Most tellingly, defense counsel makes a bald and unsupported allegation regarding

Shulman Rogers's managing partner and does so without any affidavit or declaration from the

process server describing the interaction.  Thus, this is an allegation without any evidence or

support before the Court.  Shulman Rogers vehemently denies any suggestion that its managing

partner denied his identity to avoid service.

Employing such a tactic of distraction supports that Mr. Schulman is pursuing an

impermissible fishing expedition with this subpoena.  Shulman Rogers has not contested that it

has been served with the Rule 17 subpoena. Thus, the issue before the Court is the relevancy and

appropriateness of the document requests.  Rather than addressing the merits, defense counsel is

trying to sway the Court to rule against Shulman Rogers by attempting to paint the firm in a

different light.  The allegation is unsupported and nevertheless irrelevant to the issue before the

Court, and Shulman Rogers respectfully requests the Court disregard this inappropriate and

irrelevant portion of Mr. Schulman's Opposition.

---

[2] There has been no allegation in the Opposition that the document requests now sought could not have been sought earlier, which suggests a lack of diligence and good faith by Mr. Schulman.

**ARGUMENT**

A. <u>**The Requests are Unreasonable and Oppressive**</u>

Defense counsel's assertion that the broad swath of records included in the subpoena were sought through "cooperative discussions" is an overstatement. There were two brief oral conversations between counsel about potential requests for production, ending with defense counsel stating it was seeking everything related to Somalia not provided to the government and compensation records. There was no tailoring or narrowing of that sweeping request, despite being weeks before the then April trial date. In fact, the requests that were ultimately served on Shulman Rogers went far beyond those already overly broad requests discussed orally.

The Defendant also fails to understand that he must propound requests pursuant to Rule 17 that comply with *Nixon* and Fourth Circuit precedent in order for Shulman Rogers to produce responsive documents to those requests. The Defendant, in what can be described as a classic circular argument, contends that "because Shulman Rogers has not produced the requested documents, it is not possible for Mr. Schulman to 'describe fully' the documents he seeks" Opp'n at 8. In other words, he argues that before he can comply with the requirements of *Nixon* and the constraints set forth in this Circuit, he must first receive everything he has requested. This argument is obviously misplaced, as the requests themselves must comply in a third-party subpoena. The Defendant's attempts to escape the specificity requirement is of no avail. *See Caro*, 597 F.3d at 620 (finding that mere speculation as to what the requested documents are or may show does not satisfy the *Nixon* requirements). The Opposition also ignores that Mr. Schulman was a shareholder at Shulman Rogers for many years and the lead and responsible partner for the engagements regarding the government of Somalia. He would have drafted, revised, or at least reviewed the vast majority of documents generated regarding the Somalia

work so he is uniquely situated to be able to meet the specificity requirement for a Rule 17 subpoena.

The Defendant, possibly recognizing the overreach of his requests, now attempts to paint the broad requests in a different light in his Opposition.  For instance, the Defendant represents that "Mr. Schulman's **requests** specifically seek documents 'not produced to the U.S. Department of Justice.'"  Opp'n at 8 (emphasis added).[3]  However, despite the use of the plural in "requests," only one of the fifteen requests (i.e. Request 1) includes that limitation, and that particular request is broadly, without limitation, seeking anything and everything related to work on behalf of the government of Somalia—regardless of whether that work is a basis for the charges against Mr. Schulman.  Additionally, the Defendant's suggestion that its subpoena to Shulman Rogers, a law firm with approximately 110 attorneys and other employees, constitutes a limited request to a "particular custodian (the Shulman Rogers Custodian of Records)[4]" wholly ignores that Defendant's requests implicate records of different departments and personnel within the firm from up to a decade ago.  As a final illustrative example, the Defendant contends his requests are limited to "specific time periods that align with the relevant time periods of the Indictment."  *See* Opp'n at 8.  That statement only aligns with Request Nos. 2 through 10—and notably not the overly broad Request No. 1.

---

[3] The Opposition cites multiple times to ECF No. 446-1, which is not publicly available. For purposes of this Reply, Shulman Rogers presumes that docket entry is a copy of the subpoena served to Shulman Rogers.
[4] There is no reference to a "Shulman Rogers Custodian of Records" on the face of the subpoena served.

B. **Specific Requests**

Shulman Rogers stated its objections to each request individually in its Motion but responds to the Defendant's Opposition with the same groupings employed by defense counsel. Shulman Rogers incorporates its prior objections in its Motion into this Reply.

i.  **Request 1:** Any documents not produced to the U.S. Department of Justice that relate to Shulman Rogers's work on behalf of the Somali government related to the asset recovery project, response to U.N. Monitoring Group Report, or the establishment of a Somali embassy in the United States.

The Defendant continues to seek documents beyond the relevant timeframe of the Indictment (2009 to 2014) and for matters beyond the asset recovery work that is the basis for the charges in this case. Defense counsel states that "[a]ny files maintained by Shulman Rogers regarding the asset recovery project are directly relevant to the government's charges" but does not limit this Request to that broad category.[5] It is confounding that defense counsel has stated that he "has knowledge of exculpatory documents maintained by Shulman Rogers that were not produced" to DOJ, yet defense counsel does not identify what he has knowledge of and instead propounds an overly broad request—despite *Nixon*'s specificity requirement—and expects Shulman Rogers to bear the burden of satisfying a request that is not specific to what defense counsel is actually seeking.

Mr. Schulman argues that certain Somali officials authorized the other, later matters, but a later authorization is not probative of authorization for earlier conduct. Mr. Schulman also relies upon the testimony of his current (self-interested) law partner Koushik Bhattacharya, but such testimony is unavailing as to the existence of relevant documents. Mr. Bhattacharya appears to describe an *oral* conversation with President Mahamud as a basis for a broad

---

[5] It remains unclear what types of documents related to asset recovery Mr. Schulman contends have not been produced as non-privileged or within the scope of the crime fraud exception.

document request.  That rationalization by the defense supports that this request is a classic fishing expedition.

Mr. Schulman's reliance upon a waiver argument regarding Request No. 1, which directly implicates the attorney-client privilege and work product doctrine, is misplaced and noticeably lacks any legal support.  In responding to the government, Shulman Rogers asserted attorney-client privilege as to thousands of documents. Thereafter, with the issuance of the crime-fraud order, Shulman Rogers re-evaluated its privilege log and produced documents consistent with the crime-fraud order. Shulman Rogers has not waived privilege as to withheld documents; it responded to a court order finding a lack of privilege as to a certain class of documents. *See Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 275 (E.D. Va. 2004) (finding that if a party's disclosure of documents and/or communications is judicially compelled, or judge ordered, and not voluntary, that party did not waive any privilege by the disclosure); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 n.2 (D.D.C. 1984) (finding that a "judicially compelled" document disclosure is not a voluntary disclosure).  There has been no waiver of the attorney-client privilege by Shulman Rogers.

      **ii.**    **Request 2:** Documents sufficient to evince fees collected by Shulman Rogers Gandal Pordy & Ecker, P.A. from 2009 through 2014 for matters for which Jeremy Wyeth Schulman was assigned billing credit.

            **Request 3:** All documents, communications, compensation memos, and bonus memorandum related to the determination of Jeremy Wyeth Schulman's compensation and bonus(es) for 2012, 2013, and 2014.

            **Request 5:** Documents sufficient to show the total numbers of hours billed and fees collected by Shulman Rogers for 2012, 2013, and 2014.

The Defendant's opposition to the motion to quash these requests wholly ignores that records regarding Mr. Schulman's fees collected for 2009 to 2014 were already produced to the government.  The government confirmed producing that documentation to Mr. Schulman, yet the

Defendant has not offered why such production is not sufficient to support the defense's purported argument that "firm compensation . . . is not based on an attorney's representation of one client."  Opp'n at 12.

The annual hours billed and fees collected for Shulman Rogers (not just those relating to the Somalia cases, nor for only the Defendant or others working on that case, but hours and income for all attorneys on all cases in the firm) as a whole are completely irrelevant to this prosecution.

       **iii.**     **Request 4:** Documents sufficient to show the compensation and bonus(es) for David Pordy and Sam Spiritos for 2012, 2013, and 2014.

Mr. Pordy was the prior managing partner of Shulman Rogers for almost 30 years.  Mr. Spiritos became the managing partner after Mr. Pordy and has subsequently held the position for approximately 15 years.  The Defendant seeks personal, individual compensation information regarding Shulman Rogers's managing partners.  The annual compensation of the managing partner of a firm, as an individual, is not relevant to this prosecution.  The managing partner's compensation, as this Court can take notice of, is based on the overall performance of the firm. It certainly has no bearing on the amounts paid to the Defendant, which included compensation tied to the Somalia cases.

Mr. Schulman seems to be suggesting that he has a right to see these two individuals' compensation to establish if they personally benefited from the Somalia fees paid to Shulman Rogers.  Again, that is an improper fishing expedition.  Total compensation numbers to these individuals provides absolutely no information as to what the compensation is made up of.  As with any firm, when money is paid to a firm from fees, some portion of the money goes to the partner doing the casework (here, the Defendant); part goes into a general pool; and part of the

money goes to the firm to cover expenses, such as rent, support staff, operations, and equipment. No one individual other than the producing attorney benefits directly.  Mr. Pordy and Mr. Spiritos would not have benefited any differently than any other one of the approximately 100 attorneys.  The only relevant compensation question in this prosecution is how much the Defendant received.

The compensation of Mr. Pordy and Mr. Spiritos, therefore, is not connected in any way to a certain percentage of the asset recovery work at issue in this prosecution.  Furthermore, the defense ignores the fact that such evidence is not admissible for impeachment because it does not go to the truthfulness of the witness.  *See* Fed. R. Evid. 608.  The amount of compensation received by the managing partners is not an indication as to whether they would testify truthfully under oath in a trial of the above-captioned matter.

     **iv.**    **Request 6:** Documents sufficient to show compensation structure and calculation for Shulman Rogers equity and income partners applicable for 2012, 2013, and 2014.

As noted in the Motion, Shulman Roger produced to the government details about (a) Mr. Schulman's annual compensation and (b) fees collected that were credited to Mr. Schulman (both cumulatively and as to the asset recovery matter only) for the years 2005 through 2014. The document reflecting Mr. Schulman's compensation includes an annual breakdown of components: base salary, profit sharing, bonus, total compensation, fees received, and fees received regarding the asset recovery work.  That document sufficiently shows the criteria and method of calculating shareholder compensation during the relevant time period.

     **v.**    **Request 7:** All memorandum, minutes, communications, or documents generated by or for the Executive Committee relating to Jeremy Schulman or Shulman Rogers's representation of the government of Somalia for 2009 through 2014.

**Request 8:** All memorandum, minutes, communications, or documents generated by or for the Board of Directors relating to Jeremy Schulman or Shulman Rogers's representation of the government of Somalia for 2009 through 2014.

**Request 9:** All memorandum, minutes, or documents generated by or for monthly Shareholders' Meetings relating to Jeremy Schulman or Shulman Rogers's representation of the government of Somalia for 2009 through 2014.

The Defendants justification for all three of these requests is simply proffered statements by Mr. Pordy that there was discussion of the Somalia representation in some Executive Committee meetings. *See* Opp'n at 14. There is no justification offered as to meetings of the Board of Directors or Shareholders, and thus, defense counsel essentially concedes that Request Nos. 8 and 9 are fishing expeditions for which they have no basis. Shulman Rogers has conducted a search of any written minutes, to the extent that they exist, of Executive Committee meetings and has found no reference to the information sought in Request No. 7.

vi. **Request 10:** All bookkeeping records related to the funds received on or about September 25, 2013 from Citibank New York pursuant to specified GID reference numbers.

Shulman Rogers agrees to conduct a reasonable search to determine if there are any responsive, non-privileged documents relevant to the Defendant's narrowed request for bookkeeping records regarding a funds transfer related to GID reference number E1632680012001. If located, Shulman Rogers agrees to produce non-privileged documents.

vii. **Request 11:** All final engagement letters between Shulman Rogers Gandal Pordy & Ecker, P.A. and Ali Abdi Amalow; Abdiaziz Amalo; Abdusalem Omer; Any individual acting on behalf of the Transitional Federal Government of Somalia; or Any individual acting on behalf of Federal Government of Somalia.

During the relevant time period, Shulman Rogers did not maintain a centralized repository for engagement letters. The responsible attorney—who for the Somalia matters was Mr. Schulman—was responsible for executing and maintaining such records in the case files;

9

therefore, Mr. Schulman should know which engagement letters he viewed and treated as "final." Shulman Rogers has confirmed it produced all executed engagement letters regarding Somali representations, located after a reasonable search, in its productions to the government but agrees to conduct a further search to confirm the absence of a separate engagement letter regarding the embassy project.

      **viii.**    **Request 12:** Any website pages, archived web pages, press releases issued by Shulman Rogers, or press releases issued at the direction of Shulman Rogers regarding Shulman Rogers's representation of the government of Somalia.

To the extent press releases were shared via email by Mr. Schulman or other firm attorneys and staff, such communications would have likely been encapsulated in the review and productions previously made by Shulman Rogers to the government. Shulman Rogers is assessing whether it has in its possession non-privileged archived website pages, press releases, or statements regarding the firm's representation of the government of Somalia, but preserves its prior objections and reserves the right to object to this Request to the extent accessing and reviewing any archived data is unreasonable and oppressive.

      **ix.**    **Request 13:** All communications with the U.S. Department of Justice relating to Shulman Rogers's professional liability insurance policy, including related to the coverage of Mr. Schulman's criminal defense pursuant to the professional liability insurance policy.

While Shulman Rogers does not view this request as comporting with Rule 17 and stated objections to that effect in its Motion, the firm also indicated that it was not aware of any such communications. *See* Motion at 14-15. Put another way, Shulman Rogers performed a reasonable search for any such communications and found none. Therefore, even if this request is deemed appropriate, there are no such records in Shulman Rogers's possession to produce after a reasonable search.

x.    **Request 14:** All documents and communications regarding David Pordy's departure from Shulman Rogers and the financial terms of such departure.

**Request 15:** All documents and communications relating to impropriety or allegations of financial impropriety or financial embezzlement by David Pordy. This request requires the production of allegations, complaints, claims, internal reports, internal reviews, human resource records, payment records, settlements, findings, waivers, or releases of liability relating to Pordy's conduct or alleged conduct with respect to allegations of financial impropriety or financial embezzlement, as well as the production of any misrepresentations made by Pordy in the course of evaluating such claims of impropriety.

The Defendant appears to wish to create a sideshow, or at least raise the potential for a sideshow, regarding Mr. Pordy and his departure from Shulman Rogers. Mr. Pordy's departure from the firm was not the result of any conduct related to this case and is, therefore, irrelevant. Both of these requests are vague and overbroad, with Request No. 15 purportedly spanning the entirety of Mr. Pordy's multi-decade career at Shulman Rogers.

At this stage with the trial now in August, the need for any impeachment evidence is speculative and premature. *See United States v. Wittig*, 250 F.R.D. 548, 553 (D. Kan. 2008) (noting "the fact that the requested documents might be admissible [for impeachment] cannot overcome the Court's ruling on relevance and specificity").

Dated: May 31, 2024                Respectfully submitted,

                                   /s/_____
                                   L. Barrett Boss (04404)
                                   Karen D. Williams *(pro hac vice)*
                                   COZEN O'CONNOR
                                   1200 19th Street NW, Suite 300
                                   Washington, DC 20036
                                   Telephone: (202) 912-4800
                                   Fax: (202) 861-1905
                                   Fax: (866) 413-0172
                                   bboss@cozen.com
                                   kwilliams@cozen.com

                                   *Counsel for Movant Shulman Rogers*

11

## CERTIFICATE OF SERVICE

I certify that on May 31, 2024, a copy of the foregoing was transmitted to all parties of record via the electronic filing system. The CM/ECF system sent a "Notice of Electronic Filing" to all counsel of record who have entered an appearance in this matter.

_/s/_ _____
Karen D. Williams